UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RHONDA LAWRENCE,
               Plaintiff,

                  **DECISION & ORDER**
                  17-cv-6722-JWF

v.

COMMISSIONER OF SOCIAL SECURITY,
               Defendant.
_____

## Procedural History

On July 16, 2014, plaintiff Rhonda Marie Lawrence ("plaintiff" or "Lawrence") filed for disability insurance benefits under Title II of the Social Security Act, alleging disability based on multiple sclerosis ("MS"), as well as physical, visual, and cognitive deficits. See Administrative Record, Docket # 8 ("AR"), at 14. Plaintiff's application was initially denied. AR at 75-88. Plaintiff, her attorney, and a vocational expert appeared before Administrative Law Judge Michael Carr ("the ALJ") on March 31, 2016 for a hearing on the denial of her application. AR at 28-66. The ALJ issued an unfavorable decision on May 4, 2016. AR at 14-24. Plaintiff appealed to the Appeals Council ("AC") and the AC denied plaintiff's appeal on September 18, 2017. AR at 1.

Plaintiff commenced this action on October 18, 2017 (Docket # 1) and filed her motion for judgment on the pleadings on April 20, 2018 (Docket # 10). The Commissioner filed its motion for judgment on the pleadings on July 23, 2018 (Docket # 15) and Lawrence replied on August 13, 2018 (Docket # 17).

1

For the reasons explained more fully below, plaintiff's motion for judgment on the pleadings (Docket # 10) is **granted**, the Commissioner's motion for judgment on the pleadings (Docket # 15) is **denied**, and the case is remanded for further proceedings consistent with this Decision and Order.

## Factual Background

Plaintiff is a 55-year-old woman who has worked for most of her adult life. See AR at 130-49. In 2014, after volunteering in a hospital for several months, she decided to go back to school to become a nurse. She enrolled in an LPN program and was scheduled to graduate in August 2014. AR at 161. A few months before her scheduled graduation, her heath started deteriorating. See AR at 38. Plaintiff noted that in March 2014, "I began to struggle with my studies, unable to retain information, unable to spell words that I had been working with for months. I began failing many exams although not all, and then suddenly my vision became distorted, and my being able to only see out of one eye." AR at 161. In July 2014, Lawrence was admitted to the hospital and multiple neurological tests were completed, including CT scans, MRIs, and lumbar puncture tests. AR at 205-84.

The testing results confirmed a diagnosis of multiple sclerosis or MS. "Multiple sclerosis is a slowly progressive central nervous system disease characterized by disseminated patches of demyelination in the brain and spinal cord, resulting

2

in multiple and varied neurologic symptoms and signs, usually with remissions and exacerbations." Everett v. Comm'r of Soc. Sec., No. 1:11-CV-219, 2012 WL 3731388, at *9 (S.D. Ohio Aug. 28, 2012), report and recommendation adopted, No. 1:11-CV-219, 2012 WL 4506293 (S.D. Ohio Oct. 1, 2012). "Symptoms of multiple sclerosis include: fatigue, numbness, gait, balance and coordination problems, bladder and bowel dysfunction, vision problems, dizziness and vertigo, pain, cognitive function, emotional changes, depression, spasticity, speech disorders, swallowing problems, headache, hearing loss, seizures, tremor, and respiratory problems." Id. at n.11.

Both the medical record and plaintiff's hearing testimony pay tribute to the fact that since her diagnosis, Lawrence has experienced and continues to experience many of the typical and debilitating symptoms of MS. These would include blurry vision severe enough that she can no longer drive (AR at 46), ringing in her ears (AR at 356), headaches so severe that they feel "like a knife poking in [the] side of my head" (AR at 39), cognitive disabilities including memory loss and confusion (AR at 174), gait, balance and coordination issues (AR at 21), and weakness in her arms and extremities (AR at 45). Lawrence testified that her unremitting fatigue is so severe that she usually has to nap between three and four hours each afternoon and some days she is unable to get out of bed. AR at 47-48. Lawrence has trouble

3

cooking because she cannot follow a recipe (AR at 48), has difficulty walking because she loses her balance and bumps into things (AR at 49-50, 195), and has trouble communicating because she often cannot remember what she wanted to say (AR at 54).

Not surprisingly, Lawrence developed and was diagnosed with another typical result of an MS diagnosis – depression. AR at 463. Her medical records reflect that Lawrence reported having "[d]ifficulty concentrating, [f]eeling down, depressed or hopeless." AR at 466. She had "[f]eelings of guilt" and "[l]ittle interest or pleasure in doing things." AR at 466. Medical records from the office of her long-time treating doctor, Dr. Ahlman, revealed that after being diagnosed with MS, Lawrence presented as anhedonic, anxious, and depressed. AR at 467. Sometimes "she thinks about suicide but states that she would never [] because of her faith and her children." AR at 467. Lawrence was administered the PHQ-9 test, a questionnaire used by medical professionals to screen, diagnose, monitor, and measure the severity of depression. AR at 469. "A score of 15 to 19 indicates moderately severe depression; a score of 10 to 14 indicates moderate depression; and a score of 5 to 9 indicates mild depression." Martinez v. Colvin, No. 15CIV01596RAJCF, 2016 WL 3681426, at n.4 (S.D.N.Y. June 15, 2016), report and recommendation adopted sub nom. Martinez v. Comm'r of Soc. Sec., No. 15-CV-1596 (RA), 2016 WL 3685092 (S.D.N.Y.

4

July 6, 2016). Lawrence's score of 18 confirmed significant depression. AR at 468. Dr. Ahlman prescribed an anti-depressant.

Plaintiff's complaints of depression were not transitory. In October 2015 she saw Dr. Ahlman for continued depression. AR at 479-83. On exam she was found to be anxious and anhedonic. Her doctor wrote: "Inappropriate mood and affect – depressed. Fearful. Forgetful. Hopelessness. Poor attention span and concentration – concentration disjointed." AR at 483. In January 2016, Dr. Ahlman assed her as having "reactive depression" and noted "she feels down at times[, p]articularly with regards to medical problems." AR at 493.

Lawrence's treating physicians and treating neurologist both opined that Lawrence was unable to engage in competitive full-time employment because of the myriad symptoms she suffers as a result of her MS. See AR at 442-45, 517. The ALJ gave both these opinions "little weight." AR at 21. Indeed, the only weight given by the ALJ to any opinion evidence, was "some weight" to the opinion of Dr. Putcha. Dr. Putcha is a "medical consultant" who never met, examined or spoke to plaintiff and only opined on plaintiff's exertional limitations. AR at 21. In the end, based on his review of the record evidence, the ALJ decided that Lawrence could return to her previous job as an "administrative assistant." AR at 21. In addition, the ALJ, relying on hypotheticals he posed to a vocational expert, found that Lawrence was also fully capable of

5

returning to full-time employment as a "ticket taker," a "sales attendant," or a "cleaner." AR at 23.

## Discussion

There are several reasons why the ALJ's decision here is not supported by substantial evidence. For purposes of this Decision and Order, I focus on the first one raised by plaintiff – the failure of the ALJ to consider Lawrence's non-exertional limitations.

At Step Two of the familiar five-step sequential process used by the Commissioner to determine eligibility for disability benefits, the ALJ must determine whether plaintiff has medically a determinable impairment or combination of impairments that are "severe." "The purpose of the second step of the sequential analysis is to enable the Commissioner to screen out totally groundless claims." Griffeth v. Comm'r of Soc. Sec., 217 F. App'x 425, 428 (6th Cir. 2007) (internal quotation marks omitted). Although plaintiff bears the burden of proof at Step Two, it is not a heavy burden. The Second Circuit has long held that "the standard for a finding of severity under Step Two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases." McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014) (citing Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995)). Where a claimant produces some evidence of an impairment, the Commissioner may make a determination of non-disability at Step

6

Two only when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." See SSR 85-28, 1985 WL 56856, at *3 (1985).

At Step Two in Lawrence's case, the ALJ found that plaintiff had only established two "severe impairments" – MS and cervical spine spondylosis, post fusion surgery. AR at 16. This was clear error for plaintiff's allegations of a mental impairment and limitations were far from "totally groundless." Indeed, the record reflects that Lawrence produced credible evidence that she has been found by medical professionals to have been treated for several mental health and cognitive limitations, including depression, anxiety, anhedonia, visual disturbances, confusion, severe fatigue, and recurrent painful headaches. Any finding that these limitations could not cause more than minimal limitations in her ability to perform basic work activities is not supported in this record. The medical evidence here clearly meets plaintiff's *de minimis* burden at Step Two. Accordingly, these non-exertional limitations certainly should have considered in formulating an accurate RFC.

The Commissioner nevertheless maintains that the ALJ's failure to incorporate non-exertional limitations into the RFC was harmless, because the ALJ "found that [p]laintiff could perform light, unskilled work as a cleaner, sales attendant, or ticket

taker" and these jobs would accommodate any limitations she might have in "concentration, persistence, and pace" (Docket # 15-1), at 15. I disagree. It is simply not credible to argue that by limiting plaintiff to unskilled or light work the ALJ has adequately addressed the nature and severity of Lawrence's documented non-exertional limitations. Plaintiff's non-exertional limitations go far beyond having trouble with concentration, persistence and pace. As the Second Circuit explained in <u>Parker-Grose v. Astrue</u>, 462 F. App'x 16 (2d Cir. 2012):

> [E]ven if this Court concluded that substantial evidence supports the ALJ's finding that [plaintiff's] mental impairment was nonsevere, it would still be necessary to remand this case for further consideration because the ALJ failed to account [plaintiff's] mental limitations when determining her RFC. A RFC determination must account for limitations imposed by both severe and nonsevere impairments. <u>See</u> 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe [ ]' . . . when we assess your [RFC] . . . ."); 20 C.F.R. § 416.945(a)(2) (same, but with respect to Supplemental Security Income as opposed to Social Security Disability Insurance). In this case, after finding that [plaintiff's] "mental impairment of depression does not cause more than minimal limitation in . . . her ability to perform basic mental work activities and is therefore nonsevere," [] the ALJ determined [plaintiff's] RFC without accounting for any of the limitations arising from her mental impairment that were established by substantial evidence in the record. Thus, the ALJ committed legal error.

<u>Id.</u> at 18 (internal quotation marks, brackets, and citation omitted); <u>see also</u> <u>Graham v. Berryhill</u>, No. 16-CV-6787-FPG, 2017 WL 5019274, at *4 (W.D.N.Y. Nov. 3, 2017)(remand required when ALJ

8

failed to consider plaintiff's nonsevere headaches in his RFC analysis); Bordulis v. Astrue, Civil Action No. 1:12-CV-30, 2012 WL 5870729, at *6 (D. Vt. Oct. 10, 2012), report and recommendation adopted by 2012 WL 5870723 (D. Vt. Nov. 20, 2012) ("The ALJ's flawed analysis of [plaintiff's] mental impairment [at Step Two] requires remand because it infected every subsequent step of the ALJ's decision, as the ALJ failed to include any mental health limitation in his RFC discussion and determination."); Dixon v. Astrue, Civil No. 10-5703 (RBK), 2011 WL 4478493, at *12 (D.N.J. Sept. 26, 2011) ("[T]he ALJ properly evaluated Plaintiff's depression to determine that it was not severe. . . . However, after making that determination, the ALJ neglected to factor Plaintiff's depression into the RFC analysis, and he failed to offer a reason for leaving Plaintiff's depression out of that analysis." (citation omitted)).

There is no support for the Commissioner's claim that the ALJ accounted for plaintiff's mental limitations in the rest of his decision. Indeed, the ALJ expressly gave "little weight" to the evidence that discussed Lawrence's mental impairments and limitations. It cannot be said, therefore, that the ALJ considered plaintiff's non-exertional limitations throughout the decision or

adequately addressed those impairments in formulating plaintiff's RFC. For these reasons, remand is required.[1]

## Conclusion

For the reasons explained above, plaintiff's motion for judgment on the pleadings (Docket # 10) is **granted**, the Commissioner's motion for judgment on the pleadings (Docket # 15) is **denied**, and the case is remanded for further proceedings consistent with the Decision and Order.

JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: June 14, 2019
Rochester, New York

---

[1] On remand, the Court encourages the Commissioner to reconsider whether the ALJ complied with established Second Circuit caselaw in analyzing opinion evidence in the record. As set forth above, the ALJ gave little weight to the opinions of plaintiff's treating doctors and more weight to the opinion of a non-examining consulting doctor. This seems backwards, at least to this Court. Compare 20 C.F.R. § 416.927(d)(2)("Generally, we give more weight to medical opinions from your treating sources.") with Vargas v. Sullivan, 898 F.2d 293, 295 (2d Cir. 1990)("The general rule is that the written reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability.") (internal quotation marks omitted); Rodriguez v. Astrue, No. 07CIV.534 WHPMHD, 2009 WL 637154, at *25 (S.D.N.Y. Mar. 9, 2009)("[A] doctor who has direct contact with a claimant—even as an examining doctor—is likely to have a better grasp of her condition than someone who has never seen the claimant."); Filocomo v. Chater, 944 F. Supp. 165, 170 n.4 (E.D.N.Y. 1996) ("[T]he conclusions of a physician who merely reviews a medical file and performs no examination are entitled to little, if any, weight.").